[No. 3308.   Oct. 2, 1929.]

GRIFFITH v. TIERNEY.

[281 Pac. 461.]

J. G. Fitch, of Socorro, for appellant.

Edward D. Tittmann, of El Paso, Tex., for appellee.

### OPINION OF THE COURT

SIMMS, J.   Appellant sought to enforce a constructive trust upon certain assets of an insolvent bank in a receiver's hands.   From a judgment in favor of the receiver, she appeals.

The facts are not disputed.   Claimant was a customer

of the bank since it was organized. Her husband had been a stockholder, and upon his death she succeeded to his stock. She was in the habit of discussing her investments and affairs with the bank officials and particularly with the cashier. The bank sold her a note and mortgage for $8,250, which it was carrying, assuring her it was a safe investment. The mortgage covered nine tracts of land. The mortgagor left the country and deeded the land to the bank, which thus came into possession of the legal title to the land which was subject to appellant's mortgage lien; the bank also being a general indorser on the note. Next, when claimant requested the cashier to buy her some Liberty bonds, he talked her out of that by telling her that the bank had sold the land taken over (except one tract in town which was of small value) to a man who had executed his note and mortgage for $10,000 to the bank, and that this arrangement would be much better, the purchaser was a fine man and the mortgage would be perfectly good, as the security was ample. He suggested that she turn in her $8,250 note and mortgage for this new $10,000 note and mortgage and pay the difference in cash to the bank. When claimant demurred at putting up $1,750 more, together with her old note and mortgage, for this new one, secured by the same land, the cashier again overpersuaded her. She requested that her own lawyer draw the new mortgage. The cashier replied that it would be exactly like her old one, except for the one tract in town being omitted, and the name of the mortgagor and amount of the note would be changed to fit the facts. In all other respects the mortgage would be identical with the old one, which contained nine tracts of land. He assured her he would look after the preparation of the papers himself and it was not necessary to have her lawyer handle it. When the matter was ready for closing, the cashier assured claimant that the mortgage was properly drawn in all respects in accordance with their agreement, and she, relying on this assurance as to what the mortgage contained, did not ask to see or read it, but surrendered her old note and mortgage, accepted the new loan, and left it with the bank for collection, as she had done the first mortgage. As a matter of fact in preparing the mortgage, the cashier left out

not one tract, as agreed, but three others also, and thus cleared the record lien from three salable pieces of land held by the bank. One of these three pieces was sold before the bank failed, but the note for the whole of the purchase price is in the receiver's hands; the other two tracts came into the receiver's possession along with all other assets, and he has sold them and retains the proceeds.

Claimant did not know or realize that she had been deceived by the cashier until after the bank failed and she had consulted her attorney with regard to enforcing her rights upon all eight tracts. There is no dispute here regarding the value of the claimant's security. If she prevails in this action and receives the benefits of the proceeds she claims, as well as the tracts which were in fact listed in her mortgage, we have no reason to suppose from the record that she will find herself called upon to pay over any excess to the receiver. It is more probable that she will have a substantial unsecured claim for a deficiency after her security is liquidated and applied to her note. The controversy here is with regard to the rights of the parties, upon the facts of the case, to the proceeds of these three omitted tracts of land.

The trial court decided in favor of the receiver on grounds which we will notice separately.

First, the court held that the cashier was acting in a dual capacity; that he was appellant's agent in advising about investments and the bank's agent in selling the mortgages and notes to her. It concluded that appellant could not complain of fraud practiced upon her by her own representative. But this begs the question. Appellant is not suing at law to hold the bank for deceit. She is not seeking to make the receiver pay her damages for the wrong of the cashier. Granted that in so far as the cashier was her agent she should suffer (and doubtless has) for her misplaced confidence, what about the proceeds of this fraudulent transaction? That the bank got, accepted, and kept them is admitted. The receiver still has them. There is no other specific claim upon them. In getting the sale price of these notes and mortgages,

clearing the lien off the three tracts, and getting the bank's title in shape, the cashier was the bank's agent, both by the nature of his duties and by the ratification which the bank extended in accepting the benefits and retaining them. It could not escape liability under such circumstances. Michie on Banks and Banking, § 112 (3ai) p. 784; 7 Corpus Juris, "Banks and Banking," p. 538, and note 18.

The cashier by fraud sought to deprive claimant of her lien upon the omitted tracts, and actually did succeed in destroying the legal evidence of it by getting her to release her former mortgage. But equity thwarted the wrongful act by giving rise to a constructive trust in appellant's favor. The lien was a valuable property right, and as such it might constitute the corpus of a trust. Perry on Trusts and Trustees (7th Ed.) par. 67. The bank thus stood charged in equity as trustee for appellant, holding for her benefit the equitable lien upon the omitted tracts. Had the bank not suspended business, appellant could have forced it to recognize the trust relation so long as the tracts of land or the proceeds thereof remained in its hands. Such trusts are properly called "Constructive Trusts," because the law disregards the fraudulent intention of the wrongdoer, and in place thereof imposes upon him the duty and responsibility of a trustee. White v. Mayo, 31 N. M. 377, 246 P. 910; Perry on Trusts and Trustees (7th Ed.) par. 166; Pomeroy's Equity Jurisprudence (3d Ed.) par. 155; Hanson v. Hanson, 78 Neb. 584, 111 N. W. 368.

Appellant next complains of the trial court's holding that she was barred from recovery because she was guilty of negligence in not reading the new mortgage before accepting it. In the case of Vermont Farm Machinery Co. v. Ash, 23 N. M. 651, 170 P. 741, we disposed of a similar question, holding that, where one party to an agreement undertakes to prepare the papers and represents to the other that they are correctly prepared, when in fact they have been fraudulently altered, and the other party relies upon the representation and accepts the papers without reading them, there is no such negligence as will bar the defense of fraud. The trial court's ruling was

therefore erroneous. See, also, Wilson v. Robinson, 21 N. M. 422, 155 P. 732, Ann. Cas. 1918C, 49.

Finally, counsel for the receiver seeks to sustain the judgment of the lower court upon the theory that, since his client is the representative of the general creditors, he has an equity superior to that of appellant. The receiver of an insolvent state bank occupies no better position than the bank itself, and takes its assets subject to all equities which existed at the time of his appointment. 7 Corpus Juris, "Banks and Banking," p. 735, and cases cited.

It follows that the judgment of the lower court should be reversed, and the cause should be remanded, with directions to enter a decree for appellant in conformity with the prayer of her complaint, and it is so ordered.

WATSON and CATRON, JJ., concur.

BICKLEY, C. J., and PARKER, J., did not participate.