365 P.2d 925

YUCCA MINING & PETROLEUM COMPANY, Inc., Plaintiff-Appellant,

v.

HOWARD C. PHILLIPS OIL COMPANY, a partnership consisting of Howard C. Phillips and Richard Clifton; and Howard C. Phillips, Individually, Defendants-Appellees.

No. 6774.

Supreme Court of New Mexico.

Nov. 1, 1961.

Perry S. Key, Albuquerque, for appellant.

Rodey, Dickason, Sloan, Akin & Robb, William C. Briggs, Albuquerque, for appellees.

CARMODY, Justice.

Appellant sought damages for breach of an oil well drilling contract and alternatively for rescission and damages. From a judgment denying relief, based generally upon equitable estoppel, this appeal followed.

The issues to be determined relate to the application of the statute of frauds to an oral modification of a written contract, whether a corporation is bound by the actions of its president or director, the substantial evidence rule and the pleading and proof required as to estoppel.

Plaintiff-appellant will be referred to as "Yucca" and defendants-appellees will be referred to as "Phillips."

Summarizing the contract as far as material to the issues: Yucca paid $12,000 to Phillips to drill at least two wells on a lease owned by Phillips. If both were dry holes, no further drilling was contemplated. Appellee was to account for the money used and to assign a one-half interest in the lease to Yucca.

After the first well proved to be a dry hole, Phillips did not render an accounting nor assign the one-half interest. Thereafter, a second well was drilled on other property upon which Phillips merely had drilling rights, which, incidentally, were paid for out of the $12,000. This second well also proved to be unproductive and the money was exhausted.

The real basis of the controversy has to do with whether there was a valid subsequent agreement which modified the original written contract. As to this, there is a broad conflict in the evidence, the Phillips' evidence being to the effect that Yucca's president, one of the members of its board of directors, and a consulting geologist of Yucca's agreed that further drilling after the first dry hole was inadvisable on the original lease and that the second well should be attempted on a different location, somewhat deeper than originally contemplated. To the contrary, Yucca's evidence was almost diametrically opposed, at least as to the modifying of the agreement. It should be mentiond that there never was any assignment by Phillips of the one-half interest, either to the original lease or to the property upon which the drilling rights were obtained, and Yucca's board of directors never approved the drilling of the second well. An accounting of sorts was furnished approximately six months after the abandonment of the second well.

Although Yucca relies on eight points for reversal, and in doing so devotes some 120 pages of its brief in chief to argument, we do not deem it necessary to specifically answer each point, since they are substantially interrelated.

Yucca initially urges that judgment should have been entered in its favor, because of the breach of the written contract by Phillips. These breaches consisted of

Phillips' failure to assign the one-half interest in the original lease and failure to make an accounting, although Yucca also claims that there were certain unauthorized withdrawals from the money advanced, which also operated as a breach.

It would appear that Yucca fails to distinguish between a technical breach and one which goes to the substance of the agreement. Samples v. Robinson, 1954, 58 N.M. 701, 275 P.2d 185 (and authorities cited therein); Kauffman v. Raeder, 8 Cir., 1901, 108 F. 171, 54 L.R.A. 247; Pasquel v. Owen, 8 Cir., 1950, 186 F.2d 263. In Samples v. Robinson, supra, we stated the rule, in part, as follows:

"'* * * A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement. Before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract or the failure to perform the contract must be in respect of matters which would render the performance of the remainder a thing different in substance from that which was contracted for.'" [58 N.M. 701, 275 P.2d 187.]

The trial court specifically found that the agreement as modified was performed by Phillips. The court also found that the delay in making an accounting was not prejudicial to the plaintiff, and that the failure to assign did not damage Yucca and that Yucca impliedly waived the assignment. With respect to the failure to assign, although the trial court did not say so directly, it is quite obvious from the proof that neither the lease nor the operating agreement had any value after the dry holes were drilled, and it would have been rather useless to make an assignment of any interest therein.

Yucca relies on certain of the court's findings, claiming that they are in conflict with those above mentioned; but we do not feel that, considering the findings as a whole as the ultimate facts of the case, there is any conflict in the court's findings. Also, we have fully and carefully considered the evidence offered in the case, and are convinced that the trial court's findings on this subject are based upon substantial evidence. This is true also as to the claimed unauthorized withdrawals when they are considered in light of the trial court's denial of Phillips' cross-complaint which sought reimbursement for charges in excess of the original $12,000.

Yucca next contends that since the original contract involved an interest in land and was in writing, that therefore Phillips' testimony as to subsequent oral modification was inadmissible. As to this, Yucca apparently confuses the rule which prohibits oral testimony with respect to

prior or contemporaneous agreements which vary or contradict the terms of a written contract with the rule relating to subsequent oral modification. The so-called "parol evidence rule," upon which Yucca relies, applies only to oral agreements prior to or contemporaneous with the written agreement. See, Shoucair v. North British & Mercantile Insurance Co., 1911, 16 N.M. 563, 120 P. 328; Prentice v. Cain, 1921, 27 N.M. 368, 202 P. 121; Timberlake v. Cox Bros., 1935, 39 N.M. 183, 43 P.2d 924; Bell v. Lammon, 1947, 51 N.M. 113, 179 P.2d 757. We are here concerned with an oral modification *subsequent* to the creation of a written agreement. Where a written contract subsequently has been orally modified by the parties and thereafter substantially performed, the rule for which Yucca contends has no application. Holton v. Reed, 10 Cir., 1951, 193 F.2d 390; Provencio v. Price, 1953, 57 N.M. 40, 253 P.2d 582; Underwood v. Sapir, 1954, 58 N.M. 539, 273 P. 2d 741; Kingston v. Walters, 1908, 14 N. M. 368, 93 P. 700. See, also, Kirchner v. Laughlin, 1888, 4 N.M. (Gild.) 386, 17 P. 132.

█ It would seem to us that there was substantial evidence upon which the trial court would have been justified in finding the oral modification that it did. As stated above, the testimony is in great conflict, but it would seem that in a highly speculative project such as this where all parties were primarily interested in the discovery of oil,

that it was for the trial court to determine, from the testimony, the surrounding circumstances and actions of the parties, whether there was a valid modification. It was not until considerably after the second well proved to be dry that any objection was made by Yucca or its representatives. As was stated by the trial court, "* * * Yucca took their chance and got their full play, * * *" and "* * * Yucca both wanted, to use a slang expression 'to have their cake and eat it too,' * * *." Such an expression coming from an able and highly respected trial judge, who had the opportunity of seeing and hearing the witnesses, certainly tends to show how the trial court felt about the proof offered.

█ Yucca then urges that the conclusion by the court, that Yucca waived strict performance and was estopped, was error. This would seem to be the true basis upon which Yucca rests its case. Here, again, although the testimony was in conflict, it was such as to support the trial court's finding that the president of Yucca had agreed to the modification of the contract, knew the second well was to be drilled before it was started and knew of the drilling during its course. The trial court's finding is further supported by the proof of knowledge on the part of one of the members of Yucca's board of directors of the drilling of the second well and the evidence that Yucca's consulting geologist was the person who determined where the second well was

to be drilled. In addition, there was no showing that Yucca ever objected or ever made a claim that the second well was not to be paid for in accordance with the contract, until the time the complaint was filed some eleven months after the completion of the second dry well.

■■ From these facts alone, the trial court was certainly justified in denying rescission and restitution. The law will not permit a party to sit idly by and await the results which, if favorable, he will receive the benefit of, but if unfavorable, ask rescission. Justheim Petroleum Company v. Hammond, 10 Cir., 1955, 227 F.2d 629; Nelson v. Chicago Mill & Lumber Corporation, 8 Cir., 1935, 76 F.2d 17, 10 A.L.R. 87; Putney v. Schmidt, 1911, 16 N.M. 400, 120 P. 720 (involving fraud).

One who claims the right of rescission must promptly exercise it or same will be waived. Armijo v. Nuchols, 1953, 57 N.M. 30, 253 P.2d 317.

■ The question of whether a corporation is bound by the actions of its president and other officers and agents, absent action by the board of directors, is a problem that has caused considerable difficulty. See, 2 Fletcher Cyclopedia, Corporations, (Permanent Edition), § 558; 57 Columbia Law Review 868; Lee v. Jenkins Brothers, 2 Cir., 1959, 268 F.2d 357 (in which many of the cases are noted). Although ordinarily a corporation can only act through its direc-

tors as to any matters that are not in the usual course of the daily operation of the business, it is recognized that, with the swift pace of modern business life, it is impossible to expect action by the directors in every transaction, even though it may be termed "unusual." Many courts have refused to permit a corporation to disclaim unauthorized agreements by officers as working an injustice as to parties dealing with the corporation, on various agency theories of "apparent authority," "implied authority," "waiver," or "estoppel," as well as ratification and acquiescence. See, 2 Fletcher, supra, §§ 449, 451, 452, 453 and 454, and §§ 767 to 774; and Lee v. Jenkins Brothers, supra. This court has relied on one or more of these theories. See, Lawrence Coal Co. v. Shanklin, 1919, 25 N.M. 404, 183 P. 435 (ratification); McKinley County Abstract & Investment Co. v. Shaw, 1925, 30 N.M. 517, 239 P. 865 (implied authority or estoppel); Griffith v. Tierney, 1929, 34 N.M. 387, 281 P. 461 (ratification); and Spain Management Co. v. Packs' Auto Sales, 1950, 54 N.M. 64, 213 P.2d 433 (estoppel). See, also, Burguete v. G. W. Bond & Bro. Mercantile Co., 1938, 43 N.M. 97, 85 P.2d 749 (burden of proof required for ratification, although ratification not found).

In the instant case, all of the actions of of Richards, the president of Yucca, as well as those of Mitchell, the director who apparently acted in a liaison capacity during the drilling of the second well, and the

actions of Brady, the geologist, were for the benefit of the corporation, which would have profited if the drilling had been successful. Under such circumstances, the corporation was bound by the actions taken on its behalf, and cannot be relieved by claiming lack of authority. See Pittsburgh, C. & St. L. Railway Companies v. Keokuk Bridge Co., 1889, 131 U.S. 371, at page 381, 9 S.Ct. 770, 33 L.Ed. 157; Lee v. Jenkins Brothers, supra; Spain Management Co. v. Packs' Auto Sales, supra; and Van Dusen Aircraft Supplies v. Terminal Const. Corp., 1949, 3 N.J. 321, 70 A.2d 65. As found by the trial court, Yucca was to have the benefits of the contract as modified, so it must also be charged with the burdens, and it is unnecessary for us to determine under which one or more of the aforementioned theories such result is reached.

Decisions of various courts, in upholding subsequent oral modifications of contracts within the statute of frauds, have been based upon divergent theories, including waiver, estoppel, part performance, executed contract, and the "rule that a court will not allow the Statute of Frauds to become an instrument of fraud." See, 17 A. L.R. 10, at 46, and cases cited therein, together with supplemental annotations, 29 A.L.R. 1095, 80 A.L.R. 540, and 118 A.L.R. 1511.

In Kingston v. Walters, 1908, 14 N.M. 368, 93 P. 700, 701, we stated:

"* * * [W]e will now proceed to briefly examine the complaint, to ascertain whether or not it sets up such a cause of action as would warrant the court to disregard the statute of frauds *in order to prevent a fraud.*" (Emphasis added.)

We concur fully with the court's definition of "fraud" in Holton v. Reed, supra [193 F.2d 394], as the word is used in the rule referred to above:

"The term 'fraud' does not mean actual fraud or conscious deceit. It means unjust or unconscionable conduct, such that the refusal to complete the execution of the contract would not be merely a denial of rights which it was intended to confer, but would inflict unjust and unconscientious injury and loss for which courts of law are unable to afford an adequate remedy."

In Provencio v. Price, supra, we cited Mr. Justice Cardozo's concurring opinion in Imperator Realty Co. v. Tull, 1920, 228 N.Y. 447, 127 N.E. 263, 266. There, in discussing a party's disability to assert the statute of frauds, he said:

"* * * Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. * * * We need not go into the question of the accuracy of the description. * * The truth is that we are facing a principle more nearly ultimate than either

waiver or estoppel, one with roots in the yet larger principle that no one shall be permitted to * * * take advantage of his own wrong. * * * The statute of frauds was not intended to offer an asylum of escape from that fundamental principle of justice."

In Provencio v. Price, supra, we discussed the law relative to subsequent oral modifications of contracts within the statute of frauds. We there said:

"New Mexico cases dealing with the subject, where validity of the oral modification is upheld, seem generally and in truth in every instance to rest upon some element of estoppel disclosing prejudice to avoid the bar of the statute. (Citing cases.)" [57 N.M. 40, 253 P.2d 584.]

It hardly seems necessary to state that "some element of estoppel" will be present in any situation in which a court precludes a party from hiding behind the statute of frauds in order to profit from his own inequitable conduct. See, Porter v. Butte Farmers Mutual Insurance Company, 1961, 68 N.M. 175, 360 P.2d 372.

A very similar case to the instant one is Justheim Petroleum Company v. Hammond, supra, wherein the court said:

"* * * The defendants attempted to retain their rights under the contract until after they knew that there would be no commercial production. If oil had been found in any of the sands, Justheim and his company would have owned seventy per cent of the well and leases. Where parties have the right to rescind, they cannot delay the exercise of that right to determine whether avoidance or affirmance will be more profitable to them. This is particularly true where the transaction is one of a speculative nature. * * *" [227 F. 2d 636.]

Yucca also takes issue with the question as to quantum of proof which it claims should have been required of Phillips. Many cases are cited by Yucca as to the proof required in fraud cases. In cases involving proof of fraud, the evidence must be clear and convincing. Shaw v. Board of Education, 1934, 38 N.M. 298, 31 P.2d 993, 93 A.L.R. 432; Frear v. Roberts, 1947, 51 N.M. 137, 179 P.2d 998; Kaye v. Cooper Grocery Company, 1957, 63 N.M. 36, 312 P.2d 798. But merely because the statute is known as the "Statute of Frauds" does not mean that the evidentiary rules applicable in fraud cases are equally applicable in a case involving the statute of frauds.

We have pointed out that the term "fraud," as used herein, is not the equivalent of "actual fraud or conscious deceit." Holton v. Reed, supra. Quantum of proof requirements as to "actual fraud" therefore are not controlling in this situation. We find substantial evidence supporting the

findings of the trial court, and this is sufficient. Provencio v. Price, supra.

The enforcement of subsequent oral modifications to written contracts within the statute is granted to prevent "unjust and unconscientious injury and loss" and the presence or absence of "fraud" is not a controlling factor. Holton v. Reed, supra. In cases involving an oral modification used as a defense to an action on the written contract, the controlling factor is the extent and effect of "part performance" by the one relying on the modification.

"Where one party to an oral contract has, in reliance thereon, so far performed his part of the agreement that he would suffer an unjust or unconscionable injury and loss if the other party should be permitted to set up the statute as a defense, equity will regard the case as removed from the operation of the statute and will enforce the contract by decreeing specific performance of it or by granting other appropriate relief." Holton v. Reed, supra, 193 F. 2d at page 394.

We have held that a trial court's finding of a subsequent oral modification will be affirmed if supported by substantial evidence and will support a decree of specific performance of the modification. Provencio v. Price, supra. Here there is substantial evidence of an oral modification and per-

formance in reliance upon it, and we deem this sufficient to support the trial court's findings.

We see no need to impose a more stringent rule when both parties have performed in accordance with the modification and nothing remains to be done, particularly where, as here, elements of estoppel as applied to statute of fraud cases are present. Holton v. Reed, supra, and Provencio v. Price, supra.

There are other matters that are raised by Yucca, either directly or indirectly; but the trial court, based upon substantial evidence, clearly found an oral modification of a written contract and that Yucca was estopped from seeking the relief asked. It is worthy of note, however, that Yucca claims that estoppel was not properly pleaded in accordance with Rule 8(c) (§ 21–1–1(8) (c), N.M.S.A., 1953). The argument seems to be that estoppel must be pleaded with particularity, and counsel seem to feel that Phillips' answer must have pleaded the various elements of estoppel in order to comply with the rule.

Although there are other portions of the answer that may have some application to the doctrine of estoppel, it should suffice to point out that in Phillips' fourth defense it was alleged that Yucca was "estopped" and had "waived strict compliance."

In another separate defense, Phillips generally alleged acceptance of performance of the drilling of the second well by Yucca and that it would be unjust and inequitable to permit Yucca to rely on the statute of frauds or a literal performance of the contract.

From what we have said heretofore, it is apparent that we are not here concerned with estoppel in its usual sense, but only with elements thereof which disclose prejudice warranting the court to disregard the statute of frauds. See, Kingston v. Walters, supra, and Provencio v. Price, supra. The subsequent oral modification was the basic affirmative defense, not true estoppel. Elements of the latter merely followed from the actions or non-actions of the parties during and after the substantial performance of the modified agreement. This being so, the allegations of the answer adequately presented the issue in compliance with the rule, and we find the objection to be not well taken.

Other points raised by Yucca have been considered by us and found to be without merit.

The judgment of the trial court will be affirmed. It is so ordered.

CHAVEZ and MOISE, JJ., concur.

COMPTON, C. J., and NOBLE, J., not participating.