**W. J. WALKER, Appellant,**

v.

**SHASTA MINERALS AND CHEMICAL COMPANY, and Silver King Mines, Inc., a corporation, Appellees.**

**No. 7905.**

United States Court of Appeals Tenth Circuit.

Nov. 8, 1965.

George M. McMillan, Salt Lake City, Utah (Franklin D. Johnson, Salt Lake City, Utah, with him on the brief), for appellant.

Dan S. Bushnell, Salt Lake City, Utah, for appellees.

Before PHILLIPS, BREITENSTEIN and SETH, Circuit Judges.

SETH, Circuit Judge.

The appellant brought this action for damages, and the issues were submitted to a jury on special interrogatories. These answers were, through agreement of counsel, supplemented and clarified by additional findings and conclusions made by the trial judge. Judgment was entered against appellant on his complaint, and against him on a counterclaim of one of the defendants.

Plaintiff entered into a contract with Shasta Minerals and Chemical Company in 1961 whereby certain mining claims known as the Paymaster claims were conveyed to Shasta. The plaintiff retained a five per cent net profit interest in the conveyance of these claims, and the parties further agreed that plaintiff should have an opportunity to acquire a similar five per cent interest in other properties that Shasta might acquire in the same mining district. The letter agreement about which this suit centers provided in part that the plaintiff should have "* * * the right to participate on the basis of 5% of the net profits as designated in the deed on any additional properties acquired in the Ward District, provided you your heirs and assigns shall pay 10% of the cost of acquiring such properties if they are acquired, said 10% basis being computed on the cost of acquisition to Shasta."

The record shows that in 1962, Shasta acquired an option to purchase from several parties a sixty-five per cent interest in a mining lease known as the Farnsworth lease, together with a right to purchase some additional interests in the lease. This lease was on land or claims in the Ward Mining District, and consequently the application of the above contract has become an issue in this litigation.

Shortly thereafter Shasta formed a new corporation known as Silver King Mines, Inc., and conveyed to it the Paymaster claims subject to the five per cent net profit reservation to the plaintiff. Shasta also assigned to the same corporation in May 1962 its option to purchase the interests in the Farnsworth lease. Silver King had the same directors and president as Shasta.

In June 1962 the plaintiff learned that Shasta had been negotiating for some interests in the Ward Mining District, which was the Farnsworth option described above. The following month he obtained a copy of the offering circular issued by Silver King for the sale of its stock which disclosed the assignment of the Farnsworth option to Silver King. Thereafter the plaintiff spoke to the president of Shasta about the assignment, and the official stated that they had overlooked plaintiff's right to participate but he would take it up with the lawyers. There was some additional correspondence between the parties. The plaintiff thereafter made an offer to pay a certain amount which he considered to be ten per cent of the acquisition cost. He received a response that the cost of acquisition had not been fully determined, but it would be forthcoming. In June 1963 Silver King advised plaintiff of the cost of acquisition of the Farnsworth property and offered to honor his right to participate. It appears that by this time Silver King had exercised the option in whole or in part to acquire an interest in the Farnsworth lease.

The plaintiff in his complaint for damages, and during the course of the litigation, alleged and maintained that there

had been a breach of contract by Shasta, or by Silver King, or both. Plaintiff asserts primarily that a breach occurred upon the assignment by Shasta of the option to Silver King without having first given plaintiff an opportunity to participate or acquire an interest in the option itself. He further asserts that a separate breach occurred when Silver King exercised the option without notifying plaintiff thereof; an additional breach in that Silver King's demand was for an excessive amount as plaintiff's ten per cent share of the acquisition costs as a condition to a conveyance to him of the five per cent net profit interest in the leasehold; and an anticipatory breach by each of the defendants by their indicated intention not to perform the contract.

The defendant Shasta filed a counterclaim against the plaintiff which was based upon a sale to Shasta by plaintiff of mining claims located in the state of California. Shasta asserted that the plaintiff had represented the claims to have been validly located on land subject to location, but they were not so located.

The court found for the defendants in the principal action, and for the defendant Shasta on its counterclaim, as stated above.

The issues which are raised by the appellant on this appeal are primarily matters calling for an application of the substantial evidence rule, and few questions of law arise.

■ The first issue considered is appellant's assertion that Shasta committed a breach of contract by its assignment to Silver King of the option agreement to acquire an interest in the Farnsworth lease. The appellant argues that under his contract with Shasta, he had a right to acquire an interest in the option itself; and consequently, when it was conveyed Shasta could no longer perform its part of the contract. In this connection, it is difficult to understand how appellant's net profit interest under the contract could be applied to the bare option. Appellant's position was not de-veloped in any detail during the course of the trial. The attorney for appellees however made a statement to the court, in the presence of the attorney for the appellant, that he did not see how the interest could be in the option itself. The court pointed out that there could be no interest if the property was not acquired under the option, and that the agreement could only pertain to profits of the property if acquired. The court further stated: "When we talk about an interest in an option and so forth, we are just confusing the matter." The attorney for the appellant, as indicated, was present during these statements and did not state his position nor did he express any disagreement with the statements made by the court.

The trial court however found that even if it be assumed that the contract applied to the option itself, appellant had waived any right to rely on a breach of the agreement. The record, as hereinafter outlined, supports this finding by the trial court that if there was a breach, the appellant had waived it. It shows that the appellant had knowledge of the option in June 1962 following its assignment to Silver King on May 8, 1962, and further information in July. Thereafter the appellant discussed the matter with Mr. K. L. Stoker, president of Shasta and of Silver King, and with whom the appellant had had previous dealings. Appellant told Mr. Stoker that he had a right to participate in the Farnsworth lease. Mr. Stoker replied he had forgotten about appellant's rights in this connection and would turn the matter over to the company attorney. Also the record shows that in July 1962 appellant's attorney wrote to Shasta stating in effect that he understood Shasta's cost of acquisition of additional claims in the Ward Mining District under the Farnsworth lease to be $49,600.00. Later, he stated that on this basis, appellant exercised his right to acquire a five per cent net profit interest and tendered the sum of $1,000.00, believing that $10,000.00 had been paid by Shasta. This was followed by another letter which again made reference to Shasta's cost of acquisition, and contain-

ed a request that Shasta furnish an itemized statement of the acquisition expenses which Shasta claimed to be in addition to the $49,600.00. The findings of the court and the evidence indicates that thereafter Mr. Stoker instructed that the details of the acquisition expenses be prepared, but no statement was furnished to the appellant until June 3, 1963. This letter contained details as to such costs and was signed by Mr. Stoker in his capacity as president of Silver King. It further explained that there had been a delay in providing the information because the options were not all exercised at once, and suggested how the ten per cent payment by the appellant could be made in view of the fact that part of the consideration in the acquisition of the properties under the options had been paid in stock of Silver King. This series of dealings between appellant and the two defendants showed that appellant was seeking to assert his rights under the contract throughout the entire proceedings, and was not relying on the initial assignment as a breach of contract. Thus the record supports the finding or conclusion by the trial court that if a breach had occurred by reason of the initial assignment of the option agreement, the appellant had waived it.

█ The argument of the appellant that there had been a breach by the assignment of the option itself may also be considered as an argument that the assignment prevented Shasta from itself exercising the option and thereby prevented the appellant from an opportunity to acquire an interest from it in the event the option should be ultimately exercised. The record shows clearly that during the course of the trial, Shasta and Silver King were regarded as having common duties and liabilities. The directors were the same for both corporations and Mr. Stoker was president of both. There is nothing in the record to indicate that Silver King denied any liability to the appellant by reason of its separate corporate entity. Mr. Stoker as president offered appellant an opportunity to exercise his rights. The jury expressly found that neither of the defendants prevented the appellant from exercising his rights under the contract, and this is again well supported by the record.

█ The appellant also asserts other breaches of the contract by both defendants. These include a consistent refusal by them both to recognize his rights; evidence of intention not to perform the contract in the refusal to provide him information as to their cost incurred in the acquisition of the Farnsworth lease; and by the demand by Silver King for an excessive amount for reimbursement of acquisition costs.

The jury in response to specific interrogatories found in substance: (1) That the actions of the defendants, or either of them, did not give reasonable justification to the plaintiff to conclude that they did not intend to honor the contract and to permit the plaintiff to acquire an interest in the Farnsworth property. (2) The defendants did not fail to allow the plaintiff to pay ten per cent of the cost of acquisition of the Farnsworth property. (3) The defendants did not fail to make a fair and reasonable disclosure to plaintiff of the interest acquired by either of them in the Farnsworth property. (4) The plaintiff did not permit the defendants sufficient time prior to the filing of the suit to furnish information concerning their cost of acquisition of the Farnsworth lease.

The above findings as to the actions of the defendants following the assignment of the option are well supported by the record. Appellant's argument that a breach then occurred by both parties cannot prevail as there is in fact substantial evidence to the contrary. It would serve no useful purpose to review the evidence on the particular conversations and correspondence which are concerned with these points. It is sufficient to state that the substance of the conversations and correspondence indicate that the defendants throughout evidenced an intention to abide by the contract.

The record further shows that the appellant stated during the course of the trial that he did not desire to exercise his option as to any additional acquisi-

tions of interests in the Farnsworth claims following those initially obtained. Thus no issue remained as to such subsequent acquisitions.

■ The argument of appellant that the defendants desired to be reimbursed an excessive amount by way of acquisition costs does not establish that the trial court was in error. Although the defendant Silver King may have overstated the costs or in its suggestion of several alternatives overstated the consideration to some degree, these statements did not by any means constitute a clear, unequivocal repudiation of the contract. As we stated in Kimel v. Missouri State Life Ins. Co., 71 F.2d 921 (10th Cir.), and Intermountain Rural Electric Ass'n v. Colorado Central Power Co., 322 F.2d 516 (10th Cir.), an offer to perform made in accordance with the promisor's interpretation of the contract, if made in good faith although it may be erroneous, is not such a clear refusal to perform as to constitute an anticipatory breach. The record also shows that the offer of the defendants in the letter of June 3, 1963, did not constitute an unconditional demand in the sense that it was not subject to further negotiations. Thus there was no error in the trial court's position that no breach thereby resulted.

■ The trial court granted judgment against appellant on the counterclaim of Shasta. This concerned a purchase of unpatented mining claims by Shasta from appellant which were located in California. The record shows that the 1961 contract for the purchase of these mining claims included language as follows: "As to the unpatented mining claims, Sellers represent that said claims have been validly located on ground subject to location and the Location Notices were properly posted and recorded." It appears that the land upon which the claims had been located was not open for location.

The trial court by agreement of the parties ruled on the issue as a matter of law. He held in so doing that the language constituted a representation with the intention that it be relied upon as part of the consideration for the contract and was enforceable.

The trial court based its decision on what it considered to be the general law on the subject as set forth in the case of Welchman v. Wood, 10 Utah 2d 325, 353 P.2d 165, by the Utah Supreme Court. This general doctrine was construed to mean that under the circumstances here present the representation should be enforced as a warranty. The conclusion is uncontroverted that it was intended that Shasta rely on the representation, and that it was material. We find no error in the granting of judgment on the counterclaim.

■ The additional points urged by appellant are based upon statements made by defendants' attorney during the final argument. These were statements relating to the negotiation and preparation of the contract upon which the counterclaim was based. Perhaps these matters so argued were not in evidence, but plaintiff's attorney set forth an opposite contention in rebuttal. In any event it was a matter within the trial court's discretion and we cannot say that there was an abuse of it.

We have considered other contentions of appellant relating to statements made by appellees' counsel and find no merit in them.

Affirmed.