GOLF CARTS, INC., Plaintiff-Appellant, *v.* MID-PACIFIC COUNTRY CLUB, Defendant-Appellee

No. 5061

February 23, 1972

RICHARDSON, C.J., MARUMOTO, LEVINSON
AND KOBAYASHI, JJ., AND CIRCUIT JUDGE
LANHAM IN PLACE OF ABE, J., DISQUALIFIED

OPINION OF THE COURT BY KOBAYASHI, J.

Appellant, Golf Carts, Inc., appeals from the judgment of the trial court entered in favor of appellee, Mid-Pacific Country Club. The trial court found that appellant's actions constituted a breach of contract which justified appellee in terminating their agreement.

Appellant was the assignee of a written contract dated July 31, 1961, wherein appellant's assignor was to exclusively provide golf carts which it would rent to appellee's members and guests for use on appellee's golf course. The contract was for a term of five years and provided for a specified division of proceeds between appellee and appellant's assignor. For the first three years the split was to be 60% to appellant's assignor and 40% to appellee. A 50% division was to be in effect for the remaining two years and also for an additional five years should an option be exercised

by appellant.

Because appellant was undergoing financial difficulties, appellee agreed on June 1, 1963, that the golf cart rental proceeds be divided 70% to appellant and 30% to appellee. The effective period of the changed division was never discussed by the parties and the change itself was not reduced to writing.

Subsequently a disagreement arose as to the duration of the 70-30 division. Appellee, who was doing the actual collection of the cart rentals from the golfers, began in August, 1964, to retain 50% of the rental proceeds. The appellant in May, 1965, in order to effect its interpretation of the contract that it was entitled to 70% of the proceeds, took over the collection of the cart rentals, retaining 70% and remitting 30% to appellee. Since the effective period of the changed division of the rental proceeds was never reduced to writing, it was uncertain as to whether appellant's interpretation of the effective period of the changed division was correct until the trial court ruled in favor of appellee.

On June 4, 1965, appellant filed an action in circuit court, praying for a reformation of the contract in accordance with appellant's interpretation of the agreement. Thereafter the parties negotiated extensively toward the possibility of a settlement but such efforts proved unproductive. Appellee terminated the contract and evicted appellant for alleged breach of contract on December 1, 1965.

The trial court said that the evidence was ambiguous and unclear as to the duration of the· modification of the division of the proceeds. From this the trial court concluded that "such modifications were in effect only during the period that the parties actually complied with them, and that either party had the right to terminate the modifications and revert to the original terms of the written agreement." The trial court then concludes that appellant's noncompliance with the original terms of the contract "resulted in a breach of contract on its part which justified the defendant [appellee]

in terminating the contract."

As such the issue before us is whether appellant's acts constituted a breach resulting in repudiation thus justifying appellee's termination.

Under the facts of this case, it is evident that the parties entered into the contract for the appellant to provide a needed and essential service to the appellee, that of having golf carts available to its members. The fact that appellee was to receive a percentage of the proceeds of appellant's receipts could be considered as a business-like realization of appellee for granting appellant the concession to provide the needed and essential service required by appellee. This aspect is significant because it goes to the materiality of appellant's actions in terms of whether a repudiation or sufficiently material breach existed, justifying appellee's termination. The general rule is as follows:

> 'A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement. Before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract or the failure to perform the contract must be in respect of matters which would render the performance of the remainder a thing different in substance from that which was contracted for.'

*Yucca Mining & Petroleum Co. v. Howard C. Phillips Oil Co.*, 69 N.M. 281, 285, 365 P.2d 925, 927 (1961).

The case of *Viramontes v. Fox,* 65 N.M. 275, 281-82, 335 P.2d 1071, 1075 (1959), involved a dispute between the parties over the proper interpretation of the terms of the contract involved. As a result of the dispute, appellant therein refused to perform. The following language of the court in speaking of the issue of repudiation is particularly applicable to the situation before us.

> Thus the disagreement was nothing more nor less than an attempt on the part of each party to insist on

performance according to his own interpretation of the contract terms . . . .

Under the facts presented we would therefore be unwarranted in holding there was a breach or repudiation by appellee justifying nonperformance by appellant . . . . A repudiation which may be treated as a breach justifying nonperformance by the other party must be distinct, unequivocal, and absolute refusal to perform according to the terms of the agreement . . . .

As we interpret the authorities, appellant's remedy was to tender performance according to his own interpretation of the agreement, or according to appellee's interpretation reserving his rights as to the proper interpretation of the contract and then the parties could seek relief in the courts for a construction of its terms.

In the instant case, termination by appellee was clearly not justified. A difficulty arose over the percentage of receipts appellee was to be entitled to, a secondary consideration under the agreement. The terms of that portion of the contract were disputed by the parties. Appellant offered to continue its performance while the issue as to the correct amount of proceeds appellee was to receive was resolved separately. It has been held that "an offer to perform made in accordance with the promisor's interpretation of the contract, if made in good faith although it may be erroneous, is not such a clear refusal to perform as to constitute an anticipatory breach." *Walker v. Shasta Minerals and Chemical Co.*, 352 F.2d 634, 638 (10th Cir. 1965). Surely such a demonstrated desire to continue to fulfill appellant's obligation under the contract did not amount to a distinct, unequivocal, and absolute refusal to perform. As such, it cannot be said that appellant's actions constituted a breach or repudiation, justifying appellee's termination.

Judgment reversed and remanded for trial accordingly.

*Thomas W. Flynn* for plaintiff-appellant.

*Louis A. Rodrigues* for defendant-appellee.

DISSENTING OPINION OF LEVINSON, J.

I dissent.

The present controversy arises out of a written agreement between Nick F. Czar, assignor of plaintiff-appellant, Golf Carts, Inc., and Mid-Pacific Country Club, defendant-appellee, relating to the furnishing of golf carts by Czar to Mid-Pacific's members. The agreement, which provided for an equal division of the cart rental proceeds between the parties after the first three years, was modified orally so as to give the appellant 70% of the proceeds. The circuit court concluded that the modifications remained in effect "only during the period that the parties actually complied with them, and that either party had the right to terminate the modifications and revert to the original terms of the written agreement." The circuit court also concluded that, upon Mid-Pacific's reverting to the terms of the original agreement, the appellant's non-compliance with the requirement for an equal division of the cart rental proceeds "resulted in a breach of contract on its part which justified the Defendant [Mid-Pacific] in terminating the contract." As I understand the majority opinion, the fact of the breach is not questioned. Rather, the issue is framed in terms of whether the appellant's breach was sufficiently material to justify rescission or termination of the contract by Mid-Pacific. I cannot accept the majority's conclusion that the appellant's unilateral retention of a disputed 20% of the rental proceeds amounted to a mere immaterial breach of that portion of the contract which the majority elects to describe as a "business-like realization."

The contract, in pertinent part, provided as follows:

1. Czar agrees to furnish Mid-Pacific at least twenty-five (25) golf carts suitable for use at Mid-Pacific without cost to Mid-Pacific; it is understood and agreed by the parties that delivery of said carts is subject to availability of factory delivery, shipping conditions and adequate storage facilities.

. . . .

6. Czar agrees to rent said golf carts to Mid-Pacific's members and the public for not less than SIX DOLLARS ($6.00), plus gross income tax per cart for eighteen (18) holes and THREE DOLLARS ($3.00), plus tax per cart for nine (9) holes.

-. . . .

8. The gross rental shall be divided between Czar and Mid-Pacific as follows:

(a) During the first three (3) years of this contract Czar shall receive 60 per cent (60%) of the gross rental after payment of gross income taxes and Mid-Pacific shall receive 40 per cent (40%).

(b) During the fourth and fifth years Czar shall receive 50 per cent (50%) of the gross rental after payment of gross income taxes and Mid-Pacific shall receive 50 per cent (50%).

PROVIDED, HOWEVER, that during the entire term of this agreement Czar guarantees Mid-Pacific a minimum of SIX HUNDRED DOLLARS ($600.00) per month. If Mid-Pacific's share of the rental is less than SIX HUNDRED DOLLARS ($600.00) per month, Czar within ten (10) days thereafter shall pay over the difference between said rental received by Mid-Pacific and SIX HUNDRED DOLLARS ($600.00).

9. Czar shall pay Mid-Pacific its share of the gross rental on the fifth day of each and every successive month.

The contract, on its face, reflects two objectives: 1) providing golf cart service to Mid-Pacific's members; and 2) providing an income payable monthly to Mid-Pacific. The majority picks out of thin air its determination that the service was the primary objective and that the revenue was merely a subordinate "business-like realization."

It is true that before a party to a contract is justified in rescinding because of a breach by the other party, the breach must be so material or substantial as to tend to defeat the object of the parties in entering into the contract. It

is apparent to me from the quoted paragraphs of the contract that the provisions for golf cart service and the generation of revenue were both vital to the existence of the contract as far as Mid-Pacific was concerned. The majority refers to *Walker v. Shasta Minerals & Chemical Co.*, 352 F.2d 634, 638 (10th Cir. 1965), for the proposition that a good faith offer to perform made in accordance with a party's interpretation of the contract "is not such a clear refusal to perform as to constitute an anticipatory breach." This is not relevant, since we are not dealing here with an anticipatory breach. The appellant had a present duty to pay Mid-Pacific monthly 50% of the rental proceeds, and its breach of this present obligation justified Mid-Pacific in treating the contract as at an end. *See New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 679-82 (1936).

I would affirm the judgment of the circuit court.