**Electronically Filed
Supreme Court
SCWC-17-0000317
30-APR-2020
08:27 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

FRANCIS KAHAWAIOLAA,
Respondent/Plaintiff-Appellant,

vs.

HAWAIIAN SUN INVESTMENTS, INC., a Hawaii Domestic Corporation,
RONALD J. BLANSET, and JANICE M. BLANSET,
Petitioners/Defendants-Appellees.

SCWC-17-0000317

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000317; CIVIL NO. 15-1-0180)

APRIL 30, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.  INTRODUCTION

This case involves a commercial landlord-tenant dispute.  Defendants Hawaiian Sun Investments, Inc., Ronald Blanset, and Janice Blanset (collectively referred to as Hawaiian Sun) performed a self-help eviction (also called a lockout) after

Plaintiff Francis Kahawaiolaa allegedly breached the lease. After a bench trial, the Circuit Court of the Third Circuit (circuit court)[1] found that (1) Kahawaiolaa was not entitled to damages because two of the breaches were material; and (2) his claims for equitable relief, including a claim for replevin seeking access to his personal property, were moot. The Intermediate Court of Appeals (ICA) vacated the circuit court's judgment and concluded that the circuit court erred by (1) finding that the breaches were material; (2) failing to shift the burden of proof to Hawaiian Sun on Kahawaiolaa's replevin claim; and (3) failing to exercise its equitable powers to weigh the relative harms to each party.

The ICA's first conclusion was correct - the breaches did not go to the root of the parties' intent in contracting, as evidenced by the contract itself. As to the second finding, while the ICA correctly stated the law, it incorrectly applied the law to the circuit court's decision. The circuit court found that the replevin claim was moot since Kahawaiolaa had already retrieved his personal property by the time of trial. Thus, the ICA should not have analyzed the merits of the replevin claim. Similarly, the ICA misapplied the law of equitable relief to this case because the only issue on appeal was damages for the lockout - all the equitable claims were moot. Because the ICA erred in its second two holdings, we affirm in part and vacate in part its

---

[1] The Honorable Greg K. Nakamura presided.

judgment on appeal and remand the case to the circuit court for further proceedings consistent with this opinion.

## II.  BACKGROUND

According to his trial testimony, in 2012, Kahawaiolaa began renting space for his hair salon from Hawaiian Sun in the Hilo Plaza building.  During the time period relevant to this case, Kahawaiolaa paid a monthly rent of $4,410.  Kahawaiolaa further testified that Ronald Blanset had indicated that he planned to convert Hilo Plaza to condominiums and told Kahawaiolaa that he could secure commercial space at a fixed price for a down payment of $12,000.  Kahawaiolaa agreed and paid Blanset $12,000.

A letter dated July 1, 2012 that set forth terms for the $12,000 payment is in the record.  In this letter, Hawaiian Sun wrote: "If there are differences, change of heart or we cannot reach an agreement[,] we will compensate you with a reduction of $1,000.00 per month of the [b]ase rent portion of the rent during the term of this lease, unless earlier terminated as herein provided."

Kahawaiolaa further testified at trial that he asked Blanset about the lack of progress on the condominium conversion in January 2015.[2]  Unsatisfied with Blanset's answer, and in accordance with the July 2012 written agreement, Kahawaiolaa paid

---

[2]     Page 16 of the transcript appears to indicate that this conversation took place in January 2012, but Kahawaiolaa's subsequent testimony of other events makes clear that the correct date was January 2015.

$1,000 less in rent than the amount due for that month. Subsequently, a letter apparently sent from Hawaiian Sun's attorneys to Kahawaiolaa on February 24, 2015 indicated that he owed $5,699.72 for unpaid January and February rent and fees.[3] The copy of this letter in the record contains handwritten notes indicating that Kahawaiolaa was permitted to take $1,000 off the rent each month. In addition, the handwritten notes state: "New 30 days notice then take action. Lock 'em' out." Ronald Blanset testified that the notes were in his handwriting, though he also indicated that he did not remember why he wrote them.

It appears undisputed that, in addition to the $1,000 withheld from January 2015 rent, Kahawaiolaa then withheld his rent in its entirety for the months of February, March, and April 2015. On March 18, 2015 and April 14, 2015, Hawaiian Sun sent Kahawaiolaa letters stating that these were 30-day and 15-day notices and demands for Kahawaiolaa to pay $14,719.72 in past-due rent and fees. Each letter also indicated that Kahawaiolaa had violated his lease by (1) failing to maintain the air conditioner, which allegedly caused damage; (2) having contractors complete work without permission; and (3) failing to complete inspections for a certificate of occupancy, and stated that he did not have the "license(s) to practice in the leased

---

[3] This was not the first time Hawaiian Sun sent Kahawaiolaa a notice for past-due rent. On November 1, 2013, Hawaiian Sun sent a letter indicating that Kahawaiolaa owed $16,460.54 in rent for the months of August, September, October, and November.

space."  The April 14, 2015 letter also alleged that Kahawaiolaa had failed to keep Hawaiian Sun informed of his activities, thereby violating his lease.  The April 14 letter also offered to apply the $12,000 credit to this amount, indicating a remaining balance of $7,129.72,[4] and gave Kahawaiolaa until May 1, 2015, to pay the amount indicated.  Kahawaiolaa testified that on April 29, 2015, he delivered a check for $14,000 to Hawaiian Sun.

According to his trial testimony, on May 2, 2015, Kahawaiolaa arrived at the premises and discovered that Hawaiian Sun had changed the locks.  Posted on the door was a letter from Hawaiian Sun stating that Kahawaiolaa had not responded to its notice and that it would return the $14,000 check.  Kahawaiolaa testified that he was unable to enter the premises to retrieve his personal belongings due to the lock-out.

Based on the described events, Kahawaiolaa's complaint alleged violations of Hawai'i Revised Statutes (HRS) §§ 654-1,[5]

---

[4]   The balance due reflects $14,719.72 in past-due rent and fees, minus the $12,000 credit, plus rent for the month of May.

[5]
HRS § 654-1 states in relevant part:

(a) An action may be brought to secure the immediate possession of personal property in any court of competent jurisdiction by filing a verified complaint showing:

(1) That the plaintiff is entitled to the immediate possession of the property claimed;

(2) A particular description of the property claimed; if the property claimed is a portion of divisible property of uniform kind, quality, or value, that such is the case, and the amount thereof which the

(continued...)

480-2,[6] 480-13,[7] and 480-13.5,[8] and intentional infliction of

_____

[5](...continued)
plaintiff claims;

(3) The actual value of the property claimed;

(4) That the property has not been taken for a tax, assessment, or fine pursuant to a statute, or seized under an execution or an attachment against the plaintiff or the plaintiff's property, or if so seized that it is by statute exempt from such seizure;

(5) That the property is in the possession of a named defendant, and the facts and circumstances relating to the possession thereof by the defendant, according to the plaintiff's best knowledge and belief;

(6) The names of all persons other than the defendant in possession of the property, having or claiming or who might have or claim to have an interest in the property according to the best belief of plaintiff, all of whom shall be joined as defendants in the action.

[6]     HRS § 480-2 declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

[7]     HRS § 480-13 states in relevant part:

(b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:

(1) May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit; provided that where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit.  In considering whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480-13.5; and

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees
(continued...)

emotional distress.  Kahawaiolaa also requested injunctive relief to gain access to his personal property and the leased space, and actual, statutory, exemplary, and punitive damages.

It is undisputed that on May 18, 2015, Hawaiian Sun allowed Kahawaiolaa back into the property and he resumed his business.  Kahawaiolaa testified that he lost customers, income, and an employee due to the lockout between May 2 and May 18.

On cross-examination, Kahawaiolaa testified that the lease he signed stated that the lease itself was the entire agreement and that the premises were rented as-is.  He further testified that, although the lease states that written consent of the lessor was required prior to making alterations, he did not

---

[7] (...continued)
together with the costs of suit.

[8]

Kahawaiolaa, who was 66 years old when the complaint was filed, qualifies as an elder for purposes of HRS § 480-13.5, which sets forth factors courts must consider when determining whether to increase the penalties under § 480-2 for commission of the offense against an elder:

(1) Whether the person's conduct was in wilful disregard of the rights of the elder;

(2) Whether the person knew or should have known that the person's conduct was directed toward or targeted an elder;

(3) Whether the else was more vulnerable to the person's conduct than other consumers because of age, poor health, infirmity, impaired understanding, restricted mobility, or disability;

(4) The extent of injury, loss, or damages suffered by the elder; and

(5) Any other factors the court deems appropriate.

7

obtain that consent.[9]  Nor did he provide Hawaiian Sun with a

bond before commencing construction, as the lease indicated was

required.[10]  And Kahawaiolaa testified that he did not cure the

other lease violations alleged in the April 14 letter.

Kahawaiolaa testified further on cross-examination that

he does not have a certificate of occupancy.[11]  He further

testified that, although he had a hairstylist license, he did not

---

[9]     Section 5.4 of the lease states in pertinent part:

Lessee agrees that Lessee will make no alterations or
additions or improvements to said premises without in
each such case the written consent of Lessor firsthand
obtained; further, that in the event any alterations,
additions or improvements in or to said premises are
required by reason of the special use and occupancy of
said premises by said Lessee, then said Lessee
covenants and agrees that Lessee will make such
alterations, additions or improvements in or to said
premises at Lessee's own expense; it being further
covenanted and agreed that any such alterations,
additions or improvements and in using and occupying
the premises, comply with Building Code and ordinances
of the County of Hawaii and all laws of the State of
Hawaii pertaining to such work, use or occupancy[.]

[10]     Section 5.7 of the lease states:

Lessee, before commencing any repair, alteration,
removal, reconstruction or improvement having a cost
of $10,000.00 or more shall deposit with Lessor a bond
or Certificate therefore, in a penal amount equal to
100% of the contract sum therefore and in form and
with surety satisfactory to Lessor, naming Lessor as a
co-obligee, guaranteeing improvement free and clear of
all mechanic's and material men's liens.

[11]     Section 3.7 of the lease states: "Lessee will at all times during
the term observe and comply with all laws, ordinances, and rules and
regulations now or hereinafter made by any governmental authority and
applicable to the occupancy or use of the Premises or the conduct of any
business therein or to the use of the common areas."  Haw. Cty. Code § 5-45(a)
states, "No building or structure shall be used or occupied, and no change in
the existing occupancy classification of a building or structure or portion
thereof shall be made until the building official has issued a certificate of
occupancy therefor as provided herein."

have a "beauty shop license," which is required in order to employ other stylists to cut hair. Kahawaiolaa said that he had not applied for his beauty shop license because the construction on the suite was not yet completed. In addition, not all of the people who worked in the hair salon had licenses to cut hair. Finally, Kahawaiolaa testified that the lease he signed includes a "default" clause.[12]

On redirect, Kahawaiolaa testified that he paid a large bill for air conditioner maintenance, though he could not remember when. He also indicated that getting his certificate of occupancy would take more than thirty days and he was diligently

---

[12] Section 10.1 of the lease states:

This lease is upon the express condition that, if Lessee shall fail to pay the rent herein reserved or any part thereof as the same becomes due, or shall fail to faithfully observe and perform any other term, covenant, or condition of this lease . . . and the breach or default shall continue for a period of thirty (30) days after delivery of a written notice of any such breach or default . . . Lessor may at once reenter the Premises and upon or without the entry, at its option, terminate this lease without any further service or notice or legal process, and may expel and remove from the Premises, Lessee and those claiming under it and its effects and Lessor may store, remove and dispose of any of Lessee's improvements or personal property at Lessee's expense, and may then or at any time before or thereafter bring an action for summary possession of said Premises, all without prejudice to any other remedy or right of action which Lessor may have to arrears of rent or other breach of contract; PROVIDED, HOWEVER, that if the nature of the default, other than nonpayment of rent is such that the same cannot be reasonably cured within a thirty-day period, Lessee shall not be deemed to be in default if Lessee shall, within the period, commence a cure and thereafter diligently prosecute the same to completion.

working to rectify the problem.[13]

When called to testify by Kahawaiolaa, Blanset stated that he had received the $14,000 check from Kahawaiolaa before Blanset locked Kahawaiolaa out of his unit.

Blanset also testified in Hawaiian Sun's case-in-chief. He stated that the first time he heard that Kahawaiolaa wanted his $12,000 returned was in February.[14] Blanset further testified that Kahawaiolaa's payment history was "erratic at best," and that Hawaiian Sun had been lenient about late payments. With respect to the $14,000 check, Blanset indicated that the amount confused him because the letter to Kahawaiolaa stated his balance due as $7,129.72. He therefore did not cash the check.[15]

Blanset maintained that, after he changed the locks, Kahawaiolaa did not ask him to enter to retrieve his personal property.

On the topic of damages, Blanset testified that he saw

---

[13] This was relevant because Section 10.1 of the lease, which allows self-help eviction, does not apply if the breach of the lease "cannot be reasonably cured within a thirty-day period" and the tenant commences a cure within thirty days and "thereafter diligently prosecute[s] the same to completion." Supra, note 10.

[14] Although Blanset said February 2013, it appears that he meant February 2015 because he indicates that it was after he received Kahawaiolaa's $3,400 rent payment, which occurred in January 2015.

[15] The March 18, 2015 letter listed rent past due plus rent for April, which would be due on April 1. This totaled $14,719.72. The April 14 letter listed this amount, minus the $12,000 credit from the condominium agreement, plus rent for the month of May (though it appears to be mistakenly listed as rent for the month of April twice). The total due listed in this letter was $7,129.72.

very few customers coming to Kahawaiolaa's salon.

In addition, Blanset disagreed with Kahawaiolaa's testimony that Kahawaiolaa initially gave him the $12,000 as a personal loan - he maintained that those funds were always for the condominium conversion.[16]

The circuit court issued its written decision and order on August 26, 2016. First, the circuit court found that the July 1, 2012 agreement regarding the $12,000 payment and Kahawaiolaa's conversation with Ronald Blanset about repayment gave Kahawaiolaa the right to pay a monthly rent reduced by $1,000 until the $12,000 was paid back. Second, the circuit court found that, because Hawaiian Sun received Kahawaiolaa's $14,000 check before it locked him out, non-payment of rent was not a proper justification for the lockout.

The circuit court stated that "as to Hawaiian Sun's other justifications for the lock out, Kahawiaolaa has the burden of proving that he was not in material breach of the lease." The court found that "[i]f Kahawaiolaa used or occupied the leased premises without a certificate of occupancy," that would constitute a material breach of the lease. Similarly, the court

---

[16]     In addition to Kahawaiolaa and Blanset, four other witnesses testified at trial: Karey Correa, Rhonda Nacino, Linda Sweinhart, and Janice Blanset. Correa and Nacino worked at Kahawaiolaa's salon and testified to the appointments they were unable to keep due to the lockout and the process of retrieving their personal property from the unit. Correa and Sweinhart testified to a dispute over Correa attempting to take some chairs that belonged to Janice Blanset that were stored in another unit of the building. And Ms. Blanset testified to interactions between her and Kahawaiolaa that do not bear on the issues on appeal.

found that "[i]f it is true that [Kahawaiolaa] failed to maintain an air conditioner maintenance contract and repairs to air condition[ers] were required, then this <u>could</u> constitute a material breach" of the lease. The circuit court further concluded that Kahawaiolaa did not materially violate the lease by (1) allowing a mechanic's and materialmen's lien to attach (as Hawaiian Sun did not allege that such a lien in fact attached); (2) improperly parking his motor vehicles; and (3) failing to obtain permission from Hawaiian Sun to perform electric and plumbing work on the property. The circuit court ordered Hawaiian Sun to submit proposed findings of fact (FOFs) and conclusions of law (COLs).

In a separate order, the circuit court granted in part Hawaiian Sun's motion for attorney's fees, awarding half of the requested amount.

The circuit court entered its FOFs and COLs on December 8, 2016, which tracked its earlier-issued order and used parts of proposed language that Hawaiian Sun submitted. The relevant FOFs read:

> 18. Section 5-45 of the Hawaii County Code states:
>
> No building or structure shall be used or occupied, and no change in the existing occupancy classification of a building or structure or portion thereof shall be made until the building official has issued a certificate of occupancy therefore as provided herein.
>
> 19. Section [ ] 3.7 of the Lease states:
>
> <u>Observance of Laws</u>. Lessee will at all times during the term observe and comply with all laws, ordinances,

12

and rules and regulations now or hereinafter made by any governmental authority and applicable to the occupancy or use of the Premises or the conduct of any business therein or to the use of the common areas.

20. Section 5.4 of the Lease states that any alterations, additions or improvements to the leased premises and "in using and occupying the premises, [must] comply with Building Code and ordinances of the County of Hawaii . . . ."

21. Plaintiff did not prove that he used or occupied the leased premises with a certificate of occupancy and so he did not prove that he was not in material breach of the Lease terms from May 2, 2015 to May 18, 2015.

. . .

26. Under Section 5.1 c) of the Lease, "Lessee shall maintain an air conditioners (A/C) contract to clean drainage pans and change air filters on three month interval[s]."

. . .

28. Plaintiff has not shown a breach of contract or a basis for liability under Hawaiʻi Revised Statutes ("HRS") §§ 480-2, 480-13, and 480-13.5 which prohibit unfair and deceptive acts or practices in the conduct of any trade or commerce.

29. Plaintiff has not shown there was a factual basis for liability for a claim for relief for intentional infliction of emotional distress.

The relevant COLs are as follows:

1. Because Plaintiff failed to prove he was not in material breach of the Lease when he was locked out of the leased premises from May 2, 2015 to May 18, 2015, he is not entitled to recover damages because he was precluded from entering the leased premises during this period of time.

2. Because Plaintiff was allowed entry onto the premises on May 18, 2015, Plaintiff's claim for relief for entry onto the business premises . . . and for an order to be issued pursuant to HRS § 654-2 to retrieve Plaintiff's personal property is moot.

3. Because the parties have acted in accordance with the lease which was in effect from May 18, 2015, Plaintiff's claim for relief for an order declaring Plaintiff's lease for the business premises . . . to remain in effect is moot. Furthermore, Plaintiff's claim for the possession, use and quiet enjoyment thereof for the period of the lease is moot.

4. Because Plaintiff was allowed entry onto the premises on May 18, 2015, Plaintiff's claim for relief for an order to be issued pursuant to HRS § 480-13 restraining Defendants from seizing Plaintiff's personal property, locking Plaintiff out of his business space, or harassing Plaintiff or otherwise interfering with his business, is moot.

5. Because Defendants have not breached the contract and there is no basis for liability under HRS §§ 480-2, 480-13, and 480-13.5 which prohibits unfair and deceptive acts or practices in the conduct of any trade or commerce, Plaintiff is not entitled to relief under these statutes.

6. Because there is no factual basis for intentional infliction of emotional distress, Plaintiff is not entitled to recover damages for intentional infliction of emotional distress.

7. Because Defendants have not committed an underlying tort, Plaintiff is not entitled to recover punitive damages.

## A.    ICA Proceedings

On appeal, Kahawaiolaa raised three points of error. First, Kahawaiolaa challenged the circuit court's FOF 21 and COL 1, in which it required him to bear the burden of proving that he was not in material breach of the lease at the time of the lockout.  He also challenged the corresponding findings in the circuit court's Decision and Order.

Kahawaiolaa further challenged FOF 21, arguing that the circuit court erred as a matter of law when it found he had

14

materially breached the lease by failing to obtain a certificate of occupancy and maintain the air conditioners. Kahawaiolaa contended that Hawai'i law does not permit termination of a commercial lease for breaches of the lease unless the breach is "so substantial and fundamental as to defeat the object of the parties in making the agreement." (Quoting Aickin v. Ocean View Investments Co., Inc., 84 Hawai'i 447, 460, 935 P.2d 992, 1005 (1997)).

Finally, Kahawaiolaa argued that the circuit court erred when it declined to award him damages after finding that he cured the violation of the lease caused by his non-payment of rent. On this point of error, Kahawaiolaa challenged FOFs 28 and 29 and COLs 5, 6, and 7. As part of this argument, he asserted that the circuit court should have awarded him attorney's fees instead of Hawaiian Sun.

The ICA vacated the circuit court's decision in a summary disposition order (SDO). The ICA noted that, under Hawai'i law, codified as HRS § 654-1, "[i]n an action in replevin the burden is upon the plaintiff to show that he is entitled to immediate and exclusive possession of the property claimed." (Quoting Chong v. Young, 39 Haw. 527, 529 (Terr. 1952)). Once a plaintiff establishes a prima facie case of entitlement to possession, the burden shifts to the defendant to prove that the defendant has a special right to title or possession of the property. (Citing Consol. Amusement Co. v. Jarrett, 22 Haw. 537,

15

538 (Terr. 1915)).

The ICA found that Kahawaiolaa established a prima facie case for replevin based on his possession of the property just prior to Hawaiian Sun locking him out.[17]  Therefore, the burden should have shifted to Hawaiian Sun to show any special entitlement to the property.  Instead, the circuit court "required Plaintiff to additionally prove that Plaintiff was not in material breach of the lease," despite the fact that this is not an element of a replevin claim.  The ICA noted that the clause in the lease allowing self-help eviction does not give Hawaiian Sun title to Kahawaiolaa's personal property.  Instead, it provides that Hawaiian Sun "may store, remove and dispose of any of [Plaintiff]'s improvements or personal property at [Plaintiff]'s expense."  (Alterations in SDO).  The ICA thus determined that the circuit court erred in failing to shift the burden to Hawaiian Sun on Kahawaiolaa's replevin claim.

The ICA further concluded that the circuit court did not err with respect to its burden-shifting on Kahawaiolaa's damages claim.  It reasoned that the Hawai'i Supreme Court has preserved the common law right to self-help eviction as one remedy a landlord has for material breach of a lease.  Consequently, the burden for a plaintiff in a civil case alleging wrongful use of self-help eviction is to show that he or she did

---

[17]    As discussed further below, the ICA analyzed the merits of the replevin claim apparently not realizing that the claim was moot.

16

not materially breach the lease.  According to the ICA, the circuit court correctly applied this standard.

Next, the ICA analyzed whether the two alleged material breaches of the lease were in fact material - whether the breaches "go to the 'root' of the lease" itself.  The ICA found that "the lease indicates the Defendants' objectives included assurance of [ ] long-term, monthly income and use of the property by the Plaintiff."  Consequently, it concluded that the provisions in the lease mandating that Kahawaiolaa obtain a certificate of occupancy and maintain the air-conditioning system were "peripheral" to the primary purpose of the contract and therefore that his failures to comply were not material breaches. Thus, the circuit court erred when it found that Kahawaiolaa materially breached the lease.

The ICA then held that the circuit court abused its discretion when it declined to exercise its equitable power to award damages to Kahawaiolaa based on the circuit court's erroneous conclusion that Kahawaiolaa had materially breached the lease.

Finally, the ICA vacated the circuit court's award of attorney's fees and costs to Hawaiian Sun.

**B.   Supreme Court Proceedings**

Hawaiian Sun raises two errors in its application for the writ of certiorari.  First, it argues that the ICA erred in its finding that Kahawaiolaa did not materially breach the lease.

17

And second, it argues that the ICA erred in analyzing the elements of the replevin claim.

As to the materiality of the breaches, Hawaiian Sun distinguishes Aickin on the basis that Aickin was about a forfeiture of a lease, not about a lockout.[18]  In addition, Hawaiian Sun appears to argue that the circuit court's finding of materiality should be reviewed for abuse of discretion, rather than de novo, faulting the ICA for "insert[ing] their judgment for that of the trial judge."  Hawaiian Sun further argues that failure to maintain a certificate of occupancy is a material breach because it constitutes a petty misdemeanor punishable by a fine of not more than $1,000 or imprisonment for not more than 30 days.  Hawaiian Sun also appears to argue that it could be subject to accomplice liability for Kahawaiolaa's failure to comply with the law.[19]  Finally, Hawaiian Sun argues that Kahawaiolaa's failure to maintain the air conditioner was a material breach because it resulted in the air conditioner malfunctioning, causing damage.

---

[18]    Hawaiian Sun does not explain why this factual distinction means that Aickin's method of analysis for determining whether a breach is material does not apply to this case.  In addition, the distinction is one without a real difference; forfeiture of a lease would entitle the landlord to execute a lockout.  Although the case is distinguishable with respect to the materiality holding, as explained further below, the ICA erred in relying on Aickin's holding with respect to equitable relief.

[19]    Hawaiian Sun quotes HRS § 702-222(1)(b): "A person is an accomplice of another person in the commission of an offense if[,] [w]ith the intention of promoting or facilitating the commission of the offense, the person . . . [a]ids or agrees or attempts to aid the other person in planning or committing it[.]"

With respect to the second point raised in the application, Hawaiian Sun argues that the ICA incorrectly analyzed the replevin claim as COL 1, when replevin was actually covered by COL 2. In COL 1, the circuit court found that Kahawaiolaa was not entitled to damages because he failed to prove that he did not materially breach the lease. And in COL 2, the circuit court found that Kahawaiolaa's claim for relief requesting access to his personal property was moot because he was allowed access to it on May 18, 2015.

In addition, Hawaiian Sun argues that the ICA erred in the replevin claim analysis because Kahawaiolaa never asked to retrieve his personal property.

Kahawaiolaa did not file a response.

### III. STANDARD OF REVIEW

The circuit court's finding that Kahawaiolaa's breaches "could" be material is a conclusion of law. See Brown v. KFC Nat'l Management Co., 82 Hawai'i 226, 239, 921 P.2d 145, 159 (1996) ("As a general rule, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." (citation omitted)); see also Aickin v. Ocean View Inv. Co., Inc., 84 Hawai'i 447, 461, 935 P.2d 992, 1006 (1997) (analyzing whether breach of a lease was material by reviewing the lease on its face).

"An appellate court may freely review conclusions of law and the applicable standard of review is the right/wrong

19

test. A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." Dan v. State, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994) (internal quotation marks and citations omitted).

### IV. DISCUSSION

With respect to Kahawaiolaa's claim for damages, the ICA was correct that the circuit court erred as a matter of law when it found that Kahawaiolaa's breaches could have been material. However, the ICA's analysis of Kahawaiolaa's replevin claim was superfluous because the circuit court correctly determined that the claim was moot. In addition, the ICA misapplied case law regarding the circuit court's equitable powers where all of the equitable claims were moot and only claims for damages remained.

### A. The Circuit Court Incorrectly Determined That Kahawaiolaa's Breaches Were Or Could Have Been Material

In Watson v. Brown, this court held that "a commercial landlord is not precluded as a matter of law from self-help eviction for non-payment of rent." 67 Haw. 252, 257, 686 P.2d 12, 16 (1984). Watson did not speak to the availability of self-help eviction for other types of breaches of the lease. But under ordinary principles of contract law, in order for one party to rescind the contract based on an alleged breach by the other party, the alleged breach must be material. Golf Carts, Inc. v. Mid-Pacific Country Club, 53 Haw. 357, 359, 493 P.2d 1338, 1339

(1972) (citing <u>Yucca Mining & Petroleum Co. v. Howard C. Phillips Oil Co.</u>, 365 P.2d 925, 927 (N.M. 1961) ("A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement." (quotation omitted))).

"A <u>material</u> default or breach does not result simply because a party to a contract violates one of the agreement's provisions." <u>Aickin</u>, 84 Hawai'i at 460, 935 P.2d at 1005 (emphasis in original). Instead, "the act failed to be performed must go to the root of the contract or the failure to perform the contract must be in respect of matters which would render the performance of the remainder a thing different in substance from that which was contracted for." <u>Id.</u> (quoting <u>Golf Carts</u>, 53 Haw. at 359, 493 P.2d at 1339) (emphasis omitted).

The lease between the parties has a five year term, during which Kahawaiolaa was able to occupy the premises in exchange for monthly rent of $2,940.00, plus utilities, taxes, and fees. As the ICA correctly concluded, "on its face, the lease indicates the Defendants' objectives included assurance of [ ] long-term, monthly income[.]" Kahawaiolaa's objective, as indicated by the lease, was to secure a place to conduct his hair salon business.

The circuit court's order does not include any explanation of its findings that the failure to obtain a certificate of occupancy and maintain the air conditioning system

21

were material breaches of the lease.  In the case of the air conditioner, the circuit court did not even find that Kahawaiolaa <u>did</u> breach the lease.[20]  We conclude that neither breach, if it occurred, was material.

### 1.  Failure to obtain a certificate of occupancy

The lease required Kahawaiolaa to "observe and comply with all laws, ordinances, and rules and regulations now or hereinafter made by any governmental authority and applicable to the occupancy or use of the Premises or the conduct of any business therein or to the use of the common areas."  It is undisputed that Kahawaiolaa failed to obtain a certificate of occupancy, required under Haw. Cty. Code § 5-45(a).[21]  The question is whether this breach goes to the root of the contract.[22]

---

[20]    The circuit court's Decision and Order states, "<u>If it is true</u> that Kahawaiolaa failed to maintain an air conditioner maintenance contract and repairs to air condition[ers] were required, then this <u>could</u> constitute a material breach of the Lease terms on this point." (Emphases added.)

[21]    For the text of this provision, see <u>supra</u>, note 11.

[22]    It is not clear from the record why obtaining a certificate of occupancy is Kahawaiolaa's responsibility, rather than Hawaiian Sun's.  It is possible that the responsibility arises from Kahawaiolaa doing construction on the premises, as it appears from the County Code that a person generally obtains a certificate of occupancy after new construction.  <u>See</u> Haw. Cty. Code § 5-45(c) ("The building official is authorized to issue a temporary certificate of occupancy before the completion of the entire work covered by the permit, provided that such portion or portions shall be occupied safely.").  The circuit court appears to have assumed without finding that it was Kahawaiolaa's responsibility to obtain the certificate of occupancy, not Hawaiian Sun's.  Although the ordinance does not indicate whether the landlord or the tenant is responsible for obtaining the certificate, the certificate itself must contain "[t]he name and address of the owner."  § 5-45(b)(3).  As explained further below, even assuming arguendo that it was Kahawaiolaa's responsibility to obtain a certificate of occupancy, his failure to do so was
                                                              (continued...)

22

Hawai'i courts have not ruled on the materiality of this specific type of breach of a commercial lease, and precedent from other jurisdictions is aged and sparse. But the case law that does exist shows that courts in other jurisdictions have implied or found that failure to obtain a certificate of occupancy or comply with zoning codes is not a material breach of a lease, even where the lease requires compliance with all laws. See, e.g., Entrepreneur, Ltd. v. Yasuna, 498 A.2d 1151, 1159-60 (D.C. Ct. App. 1985) (forfeiture of the lease was not warranted where tenant failed to obtain a certificate of occupancy for tenant's mail-order business); Ogden v. Hamer, 268 A.2d 500, 501 (N.Y. App. Div. 1944) (forfeiture was not warranted after tenant failed city inspection where "the covenants were substantially performed and no injury resulted to the landlords for the failure to comply strictly"); Madison Stores, Inc. v. Enkay Sales Corp., 142 N.Y.S.2d 132, 138 (N.Y. Mun. Ct. 1955) (placement of signs in building window in violation of zoning code prohibiting signage would not justify forfeiture).

At the same time, several of these cases holding that various legal violations are not grounds for forfeiture imply that the tenant would be in a legally worse position had the tenant failed to maintain a certificate of occupancy. For example, in Intertherm, Inc. v. Structural Systems, Inc., the

_____

[22](...continued)
not be a material breach of the lease.

Missouri Supreme Court held that, although the tenant breached the lease by failing an inspection of its warehouse, the fact that "the occupancy permit was presently valid" was reason to think that the breach of the lease was not material. 504 S.W.2d 64, 67 (Mo. 1974) (alterations and quotation marks omitted). This comparison suggests that some courts may consider failure to maintain a certificate of occupancy a particularly severe type of legal violation.

On the whole, it appears that courts are most likely to find legal violations to be material lease violations where the legal violation threatens the health or safety of the occupants. See, e.g. Lewis v. Clothes Shack, Inc., 309 N.Y.S.2d 513, 515-16 (N.Y. Civ. Ct. 1970) (finding material breach where tenant failed to clear a fire hazard for one-and-a-half years), rev'd on other grounds, 322 N.Y.S.2d 738 (N.Y. App. Term 1971) (citing First Nat. Stores v. Yellowstone Shopping Center, Inc., 237 N.E.2d 868 (N.Y. 1968)).

In this case, there is no indication that Kahawaiolaa's failure to obtain a certificate of occupancy affected the root of the contract, nor that his breach caused or perpetuated a safety hazard.[23] Consequently, we hold that, under the circumstances of this case, this breach was not material.

---

[23] Our ruling is based on the language of this lease, which did not specify that obtaining a certificate of occupancy was a material term of the agreement.

24

### 2. Failure to maintain air conditioners

Kahawaiolaa's alleged failure to maintain the air conditioners was plainly not a material breach. Although Hawaiian Sun alleged that this breach caused damage, that is not an element of materiality.

Viewing the lease as a whole, we can surmise that Hawaiian Sun <u>did</u> have the purpose of receiving the property back at the end of the lease in substantially the same condition in which they leased it to Kahawaiolaa. It is possible that failing to maintain the air conditioner in a way that causes significant damage would frustrate that purpose. But that argument is fundamentally about <u>damage</u> to the property, not air conditioner maintenance. Failing to maintain an air conditioning system may or may not ultimately result in property damage. Under the circumstances of this case, air conditioner maintenance itself did not affect the parties' purpose in contracting, as evidenced by the contract itself. Thus this breach also was not material.

### B. Kahawaiolaa's Replevin Claim Was Moot

An action in replevin seeks return of specific personal property. <u>Tsuru v. Bayer</u>, 25 Haw. 693, 697 (Terr. 1920). HRS § 654-1(a) codifies replevin into statute. The statute provides, "An action may be brought to secure the immediate possession of personal property in any court of competent jurisdiction by filing a verified complaint" that meets certain requirements. In COL 2, the circuit court found that Kahawaiolaa's claim for

25

return of his personal property was moot by the time of the trial because he was allowed access to the premises on May 18, 2015, sixteen days after being locked out.

The ICA did not analyze whether the circuit court erred when it deemed Kahawaiolaa's replevin claim moot. Instead, the ICA appears to have erroneously read the circuit court's COL 1 as if it applied to the replevin claim when in fact, COL 2 applied to the replevin claim.[24] The ICA proceeded to analyze the accuracy of COL 1's burden-shifting framework as applied to a replevin claim, determining it to be in error. Had the circuit court in fact failed to shift the burden of proof in the way that the ICA said, the ICA's judgment would have been correct.

But as it stands, the ICA's analysis appears to have been based on a mistaken reading of the circuit court's order. COL 1 applies only to Kahawaiolaa's damages claim. The circuit court was right to find that the replevin claim was moot because Kahawaiolaa had by then received access to his personal property.

---

[24]     COL 1 states:

> Because Plaintiff failed to prove he was not in material breach of the Lease when he was locked out of the leased premises from May 2, 2015 to May 18, 2015, he is not entitled to recover damages because he was precluded from entering the leased premises during this period of time.

COL 2 states:

> Because Plaintiff was allowed entry onto the premises on May 18, 2015, Plaintiff's claim for relief for entry onto the business premises . . . for an order to be issued pursuant to HRS § 654-2 to retrieve Plaintiff's personal property is moot.

26

**C.    The Circuit Court Committed No Additional Errors With Respect To Its Equitable Powers**

The ICA engaged in analysis of the circuit court's use of its equitable powers despite the fact that the only remedy on appeal was the legal remedy for the lockout - damages.  The other equitable claims were moot.  The ICA's analysis appears to have been based on a misapplication of Aicken and Food Pantry, Ltd. v. Waikiki Business Plaza, Inc., 58 Haw. 606, 575 P.2d 869 (1978).  The ICA quotes Food Pantry as stating, in part, "In an action for declaratory judgment, the court is empowered to grant ancillary equitable relief . . . .  Equity does not favor forfeitures, and where no injustice would thereby be visited upon the injured party, equity will award him compensation rather than decree a forfeiture against the offending party."  (Citing 58 Haw. at 613-14, 575 P.2d at 875-76)  The ICA took this quote to mean that in the present case, it must analyze whether the circuit court erred when it declined to award damages based on its finding that Kahawaiolaa materially breached the lease.  But this misreads Food Pantry.

Kahawaiolaa's complaint is not a declaratory action.  And the matters on appeal relate only to damages he allegedly suffered as a result of Hawaiian Sun exercising self-help eviction.  Therefore, the rule stated in Food Pantry does not apply in the first instance.  Second, in Food Pantry, the trial court refused to declare the lease invalid after the landlord

27

requested that it do so. 58 Haw. at 617-18, 575 P.2d at 878. The language from Food Pantry the ICA quoted refers to the trial court's equitable authority to grant damages instead of the equitable relief requested (in Food Pantry, a declaration that the lease was no longer in effect). That is not the situation presented in Kahawaiolaa's case; the ICA erred in applying that analysis here.

As a consequence of its analysis, the ICA remanded the case to the circuit court with instructions to "act in accordance with established principles of equity to balance the damages to Defendants stemming from Plaintiff's breaches and the damages to Plaintiff stemming from Defendants' own breaches of the lease[.]" This balancing would be inappropriate given that the only matter left for the circuit court to decide after correctly finding that Kahawaiolaa's equitable claims were moot was the amount of damages to which Kahawaiolaa is entitled. Hawaiian Sun did not counterclaim for any damages against Kahawaiolaa. We therefore vacate the portion of the ICA's judgment finding that the circuit court abused its discretion in exercising its equitable powers.

The ICA did not conclude that the circuit court erred in determining the merits of Kahawaiolaa's unfair competition and intentional infliction of emotional distress claims except to the extent that the circuit court based that decision on a finding that Kahawaiolaa's breaches were material. Kahawaiolaa did not cross-appeal. Consequently, we need not analyze those claims

28

further.

## V.   CONCLUSION

Although the ICA was correct to hold that Kahawaiolaa was entitled to damages because he did not materially breach his lease, it was incorrect to analyze the merits of the moot equitable claims.  Accordingly, we affirm in part and vacate in part the ICA's September 12, 2019 judgment on appeal, and remand the case to the circuit court for entry of a judgment of damages in favor of Kahawaiolaa, in accordance with this opinion, in an amount it determines appropriate.

Al Thompson
for petitioners

Peter L. Steinberg
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

